## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LARRY HYCHE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-2450 |
| | § | |
| EQUIFAX INFORMATION | § | With Jury Demand Endorsed |
| SERVICES, LLC, EXPERIAN | § | |
| INFORMATION SOLUTION, LLC, | § | |
| TRANS UNION, LLC, and | § | |
| NATIONSTAR MORTGAGE, LLC, | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Larry Hyche ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services, LLC, Experian Information Solution, LLC, Trans Union, LLC, and Nationstar Mortgage, LLC, jointly, severally, and in solido, states as follows:

### I.   INTRODUCTION

1.      Three of the Defendants are, consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and one Defendant, Nationstar Mortgage, LLC, is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, Larry Hyche, is a natural person residing in Cook, Illinois. He is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c) and a victim of repeated false credit reporting.

Made Defendants herein are:

3.      Equifax Information Services, LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants," does business in this judicial district and is a Georgia corporation with its principal place of business in Georgia. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Experian Information Solution, LLC, which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants,", does business in this judicial district and is an Ohio corporation with its principal place of business in California. Experian is a nationwide CRA as defined by  15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.      Trans Union, LLC, which may also hereinafter be referred to as "Trans Union",

"Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants," does business in this judicial district and is a Delaware corporation with its principal place of business in Illinois. Trans Union is a nationwide CRA as defined by  15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. §  1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.      Nationstar Mortgage, LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Texas corporation with its principal place of business in Texas located at 8950 Cypress Waters Blvd, Coppell, TX 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

## III.  JURISDICTION AND VENUE

8.     Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681(p).  Further, the matter in controversy exceeds $75,000.00, exclusive of costs and interest and the parties to these proceedings are citizens of different states. 28 U.S.C. § 1332**.**  Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367**.**

9.     Venue is proper in this District, because Defendants transact business in this District, Defendant Nationstar is incorporated in this District, and a substantial part of Defendant Nationstar's conduct occurred in this District. 28 U.S.C. § 1391**.**

## IV.  FACTUAL ALLEGATIONS

10.     In September 2005, Plaintiff secured a mortgage for his home at 1000 S Aberdeen St, Chicago, IL 50543 with Citibank, N.A.

11.     In 2006, Plaintiff refinanced his mortgage through HomEq Servicing Corp.

12.     On or about 2009, Plaintiff's mortgage was consigned, placed, sold, assigned or otherwise transferred to Defendant Nationstar for collection from Plaintiff.

13.     On or about November 21, 2008, Plaintiff filed for Chapter 7 Bankruptcy.

14.     On or about March 2009, Plaintiff was discharged from bankruptcy.

15.     On or about December 2015, Plaintiff signed a Loan Modification Agreement with

Nationstar and continued to make regular monthly payments since that time.

16.     A copy of Plaintiff's payment history is attached hereto as Exhibit "A".

17.     A copy of Plaintiff's Home Affordable Loan Modification Agreement is attached hereto as Exhibit "B".

18.     Sometime in May 2019, Plaintiff requested and received a copy of his credit report assembled, evaluated, and disbursed by Equifax and noticed that his Nationstar mortgage account had been removed.

19.     Plaintiff noticed that within the Equifax credit report, his tradeline was missing after the loan modification became effective in November 2015.

20.     Sometime in June 2019, Plaintiff requested and received a copy of his credit report assembled, evaluated, and disbursed by Experian and noticed that his Nationstar mortgage account had been removed.

21.     Plaintiff noticed that within the Experian credit report, his tradeline was missing after the loan modification became effective in November 2015.

22.     Sometime in July 2019, Plaintiff made a second request and received a copy of his credit report assembled, evaluated, and disbursed by Experian and noticed that his Nationstar mortgage account was still missing after the loan modification became effective in November 2015.

23.     Sometime in May 2019, Plaintiff requested and received a copy of his credit file assembled, evaluated, and disbursed by Trans Union and noticed that his Nationstar mortgage account had been removed.

24.     Plaintiff noticed that within the Trans Union credit report, his tradeline was missing after the loan modification became effective in November 2015.

25.     On or about June 10, 2019, Plaintiff disputed the reporting of the Nationstar mortgage account with Equifax, Experian, and Trans Union ("CRA Defendants") directly. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the missing tradeline on Plaintiff's credit reports concerning the Nationstar mortgage account.

26.     Equifax responded to Plaintiff's dispute on or about June 17, 2019.

27.     A copy of Equifax's response letter dated is attached hereto as Exhibit "C" and incorporated herein by reference.

28.     In its response letter to Plaintiff ("Equifax's Response Letter"), Equifax responded by stating "The disputed item is not currently reporting on the Equifax credit file." Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar mortgage account.

29.     Upon the Plaintiff's request to Equifax for verification and addition regarding the Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims, or evidence. Further, Equifax did not make any attempts to substantially or reasonably verify the Nationstar reporting lines.

30.     In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

31.     Experian responded to Plaintiff's dispute on or about June 21, 2019 and again on or about July 3, 2019.

32.     A copy of Experian's response letter dated June 21, 2019 is attached hereto as Exhibit "D" and incorporated herein by reference.

33.     A copy of Experian's response letter dated July 16, 2019 is attached hereto as Exhibit "E" and incorporated herein by reference.

34.     In its June 21, 2019 response letter to Plaintiff ("Experian's Response Letter"), Experian stated" Unfortunately, we are unable to honor your request to place credit information into your personal credit report. We do not add data to our databases from private parties since we would be unable to verify or maintain data.". However, this is inaccurate as Plaintiff provided information to Experian regarding his Nationstar mortgage and by extension, provided Experian the information needed to verify Plaintiff's mortgage payments. Yet, Experian chose not to "verify" the information provided, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar mortgage account.

35.     In Experian's July 16, 2019 Response Letter to Plaintiff following its investigation Experian once again states they are unable to place credit information into Plaintiff's credit report.

36.     Upon the Plaintiff's request to Experian for verification and addition regarding the Nationstar mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims, or evidence. Further, Experian did not make any attempts to substantially or reasonably verify the Nationstar reporting lines.

37.     In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

38.     Trans Union responded to Plaintiff's dispute on or about June 18, 2019.

39.     A copy of Trans Union's response letter dated June 18, 2019 is attached hereto as Exhibit "F" and incorporated herein by reference.

40.     Trans Union's response to Plaintiff ("Trans Union's Response Letter") was to simply provide Plaintiff with his credit report and instructions on how to request an investigation if he "… believe[s] an item of information to be incomplete or inaccurate…." Trans Union did not investigate or verify any information Plaintiff disputed, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar mortgage account. (*See* Exhibit F).

41.     Upon the Plaintiff's request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar reporting lines.

42.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

43.     After the CRAs notified Nationstar of the disputed tradeline involving the Nationstar mortgage account, Nationstar failed to change, modify, or update any of the information and continued to refuse furnishing to the CRAs Plaintiff's tradeline.

44.     On or about June 10, 2019, Plaintiff again disputed the omission of his mortgage account from his credit reports. Plaintiff requested that under the FCRA, Defendant Nationstar conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the missing Nationstar mortgage tradeline.

45.     A copy of Nationstar's response letter dated June 18, 2019 is attached hereto as Exhibit "G" and incorporated herein by reference.

46.     Nationstar's response to Plaintiff stated that due to Plaintiff's Chapter 7 Bankruptcy discharge on March 10, 2009, they were unable to report Plaintiff's monthly installments to the credit reporting agencies as he is no longer liable for the debt, even though he later entered into, and signed, a Loan Modification Agreement with Defendant Nationstar made on or about December 7, 2015, and fully executed on February 1, 2016. (*See* Exhibit B).


## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

47.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

48.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

49.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

50.     Plaintiff provided his mortgage payments to Equifax and furnished Equifax the necessary documentation supporting Plaintiff's tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiff.

51.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Equifax readily provided false reports to one or more third party, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

52.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

53.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

54.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

55.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

56.     Equifax violated 15 U.S.C. § 168li on multiple occasions by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is

unreliable.

57.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

58.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

59.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

60.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

61.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

62.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

63.     Plaintiff provided his mortgage payments to Experian and furnished Experian the necessary documentation supporting Plaintiff's tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiff.

64.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Experian readily provided false reports to one or more third party, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

65.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

66.     Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

67.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

68.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

69.     Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies,

failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

70.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

71.     Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

72.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT V – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

73.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

74.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

75.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a

consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

76.     Plaintiff provided his mortgage payments to Trans Union and furnished Trans Union the necessary documentation supporting Plaintiff's tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

77.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Trans Union readily provided false reports to one or more third party, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

78.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

79.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

80.     The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

81.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

82.     Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

83.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

84.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

85.     The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.


**COUNT VII – NATIONSTAR'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**


86.     Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer

reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify, delete, and/or block the information.

87.     Nationstar knew about the Loan Modification Agreement between Defendant and Plaintiff, and therefore Nationstar failed to conduct a reasonable investigation to determine whether the disputed information could be verified and furnished—especially considering Nationstar knew or should have known that the information was being reported inaccurately. *See Pittman v. Experian Information Solutions, Inc.,* 901 F.3d 619, 640 (6th Cir. 2018) (citing *Jett v. Am. Home Mortg. Servicing, Inc.,* 614 F. App'x 711, 713-14 (5th Cir. 2015) ("American Home knew that Jett's information was being reported inaccurately....")).

88.     As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

89.     Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

90.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the

principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

91.     Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

92.     Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

93.     The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

94.     Defendants complete indifference as to its obligations under the FCRA demonstrates a conscious disregard of the rights of Plaintiff, and injuries suffered by Plaintiff are realized by circumstances of fraud, malice, and willful misconduct calling for an assessment of punitive damages against the Defendants, pursuant to 15 U.S.C. § 1681n(a)(2).

95.     Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

96.     Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

97.    Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

WHEREFORE PREMESIS CONSIDERED, Plaintiff, Larry Hyche, prays that this Honorable Court:

A.    Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services, LLC, Experian Information Solution, LLC, Trans Union, LLC, and Nationstar Mortgage, LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.    Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.    Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.    Order that the CRA Defendants, Equifax Information Services, LLC, Experian Information Solution, LLC, Trans Union, LLC, and Furnisher Defendant, Nationstar Mortgage, LLC,

work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

      E.     Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Respectfully submitted,

*/s/ Matthew P. Forsberg*
Matthew P. Forsberg
State Bar Number 24082581
Matt@FieldsLaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

COUNSEL FOR PLAINTIFF

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

October 16, 2019           */s/ Matthew P. Forsberg*
Date                          Matthew P. Forsberg